## Anspach's Estate.

The facts appear from the following extracts from the adjudication of

LAMORELLE, P. J., Auditing Judge.—James Anspach, who died February 6, 1917, gave the residue of his estate in trust to set aside a fund sufficient to "provide for the following annuities, which shall be paid as follows:

"The sum of Five Hundred Dollars a year in equal quarterly payments, for the benefit of my niece Rosalie Anspach, for the term of her natural life. Said amount may be paid directly for the maintenance of said Rosalie Anspach, or may be paid to Caroline Anspach or to any of her sisters for her; or in the discretion of my said trustee, may be paid to any person whom my trustee may select, to be by him or her expended for the benefit, maintenance, comfort and support of my said niece. Upon the death of the said Rosalie

Anspach, the said annuity of Five Hundred Dollars shall be distributed as is hereinafter provided for the rest of the income of my residuary estate."

Testator also directed that there shall be paid twelve hundred dollars a year to his niece, Caroline Anspach, for life, and "after the death of the said Caroline Anspach, if that event shall happen during the lifetime of Rosalie Anspach, then in lieu of the annuity of Five Hundred Dollars hereinbefore provided for the said Rosalie Anspach, I direct that an annuity of One Thousand ($1000.00) Dollars or so much thereof as may be necessary for her maintenance and support shall be paid for the benefit of the said Rosalie Anspach in lieu of said annuity of Five Hundred Dollars in the same way as is above provided for the annuity of Five Hundred Dollars." . . .

The petition for distribution states that by decree dated May 21, 1908, the Court of Common Pleas No. 5 of Philadelphia County, as of March Term, 1908, No. 4939, adjudicated said Rosalie Anspach to be of weak mind and not able to take care of her property and appointed Clara Anspach and Caroline Anspach, her sisters, guardians of her estate. Rosalie Anspach died June 8, 1930.

It is agreed by all parties in interest that beginning with the year 1918 and ending with 1924 there was paid to Clara A. Woffington, guardian of Rosalie Anspach, for the maintenance and support of the latter $3750. This amount was paid as follows: 1919, $750; 1920, $1000; 1921, 1922, 1923, 1924, each $500. The reason why the trustee, after the year 1920, paid only $500 a year for the years 1921, 1922, 1923 and 1924 was that Clara A. Woffington, guardian of Rosalie Anspach, wrote a letter to the Fidelity Trust Company, in which she stated that beginning with the next payment in February, 1921, to her, as guardian of Rosalie Anspach, she would only draw $125 quarterly of the annuity and that this sum would be sufficient. The reason why nothing was paid in the following years was because Clara A. Woffington, guardian of Rosalie Anspach, wrote to the Fidelity Company that Mrs. Anna W. Worheide and she had decided that for the present they would not need to draw the quarterly payment of $125 for the maintenance and support of the sister, Rosalie Anspach.

It is agreed by all parties in interest that beginning with the year 1919 and up to the time of the death of Rosalie Anspach there was spent for her support $8071.66. . . .

Mr. McCarron, counsel for the guardian of the estate of Rosalie Anspach, deceased, furnishes a list of amounts paid for the administration expenses in connection with the separate estate of Rosalie Anspach, deceased. This total is $1472.15. The administration expenses are for commissions, state tax, premium on bond, counsel fee and service as fiscal agent. This letter and list is marked "D" and is hereto attached and made part hereof.

Mr. Randall, counsel for the administrator of Rosalie Anspach, deceased, in his letter marked "A," gives a total of administration expenses as $1431.15, or $41 less than the amount shown by Mr. McCarron's list of expenses. The Auditing Judge adopts the figures of Mr. McCarron as being correct.

Mr. Randall contends that these administration expenses in connection with the separate estate of Rosalie Anspach were just as necessary for her maintenance and support as money actually paid to the hospital.

In connection with the $500 annuity, the words comfort, maintenance and support are used, while in connection with the $1000 annuity, only the words maintenance and support are used. The New Century Dictionary defines comfort as follows: "Strengthen aid or assist, console, cheer, also a state of ease, with freedom from pain and anxiety and satisfaction of bodily wants;" maintenance as follows: "A keeping up, preservation, support,

means of subsistence or livelihood, means of provision for maintenance, upholding," and support as follows: "Maintain, by supplying the things necessary to existence, provide for as furnishing means or funds, to uphold by aid or countenance, a means or source of maintenance or subsistency, maintenance as of a person, family and etc. with necessaries, means or funds." In the opinion of the Auditing Judge, the words comfort, maintenance and support do not embrace the administration expenses paid by the guardian of the estate of Rosalie Anspach, and he so rules.

The Auditing Judge notes that during the year 1920 the full amount of $1000 was paid; that the amount spent for the support was $863.17. The direction of testator is that an annuity of $1000, or so much thereof as may be necessary for her maintenance and support, shall be paid for the benefit of the said Rosalie Anspach. Under this language it was clearly obligatory on the trustee to pay either $1000 or a lesser sum. The trustee, however, was vested with discretion to pay $1000 or a lesser sum. He exercised his discretion and paid $1000; the Auditing Judge, therefore, rules that the payment of $1000 in 1920 was a proper payment, although the amount spent for support during that year was a lesser sum. Excluding, therefore, the year 1920, the amount paid from 1919 until the death of Rosalie Anspach was $2750, and the amount spent for her support was $7208.49, a difference of $4458.49.

Counsel agrees that the trustee was authorized to pay whatever amount was required for the maintenance and support of Rosalie Anspach after the death of Caroline Anspach, notwithstanding the fact that Rosalie Anspach had an individual estate of her own, and Longenecker's Estate (No. 1), 226 Pa. 1, so rules.

The question, therefore, is whether the estate of Rosalie Anspach, deceased, was entitled to the said sum of $4458.49 or to an annuity of $1000 from the time of the death of Caroline Anspach to the time of her own death. Mr. Randall contends that she was entitled to the full sum of $1000 a year, and counsel for Clara A. Woffington, Anna W. Worheide and the Contributors to the Pennsylvania Hospital contend she was only entitled to the amount required for her support.

Mr. Randall relies mainly on the ruling in Minnich v. Peoples Trust Co., 29 Pa. Superior Ct. 334, and Longenecker's Estate (No. 1), supra. Other counsel contends that these cases do not decide the question involved herein, and an examination of these cases is, therefore, necessary.

In Minnich v. Peoples Trust Co., supra, testatrix gave one-half of her residuary estate to her daughter, Maria Minnich, absolutely and the other half in trust with the direction "that the income or so much thereof as may be deemed necessary, be used for the comfortable maintenance and support of my daughter Harriet Longenecker, who is of weak mind. It is my request also, that the said Harriet be given a home in her, the said Maria Minnich's, family, or among people who will properly treat and care for her during her lifetime." At her death she gave the corpus "with the accumulated income and accrued interest" to the children of the said Maria Minnich in equal shares and parts "to those of them then living, and issue of them then dead, per stirpes." The guardian of the estate of Harriet Longenecker, deceased, and the trustee under the will of the testatrix, Elizabeth Longenecker, entered into a case stated in which it was agreed that Harriet Longenecker had an independent estate of $20,000 and that the income therefrom was sufficient to maintain her. The guardian contended that Harriet Longenecker should be supported from the income of her individual estate and that the income should accumulate for the benefit of the children of Maria Minnich. The trustee

contended that he was authorized to use the income of the estate as directed by the testatrix and the court of common pleas decided in favor of the contention made by the trustee.

In Longenecker's Estate (No. 1), *supra*, the will of Elizabeth Longenecker came before the orphans' court. The trustee filed an account during the continuance of the trust wherein he claimed credit for board, maintenance and care of the said *cestui que trust* amounting to $4050. The lower court, notwithstanding the prior decision of the court of common pleas, refused to allow the credit because Harriet Longenecker had an independent estate sufficient to supply her needs and fixed the balance due the trust estate at $22,182.77. On appeal to the Supreme Court, it was held that the credit should be allowed.

An examination of the paper books in Longenecker's Estate (No. 1), *supra*, shows that all of the income collected less said sum of $4050 was in the hands of the trustee at the time of the audit of her account. The court made no award of the balance shown by the account. The guardian did not claim it should be paid to him. No question was raised as to whether the direction to pay the accumulated income at the death of the *cestui que trust* was an illegal one. In the opinion of the Auditing Judge, these two cases are not helpful in the solution of the question herein involved.

The attention of the Auditing Judge is also called to the fact that a petition was filed in this court in 1920, in which it is stated that the income from the fund of $35,000 which was set aside to pay said annuity of $1000 exceeded the amount required to pay said annuity by $900 and the court was asked to make a direction to distribute the said excess among the two surviving *cestui que trustent* and the Contributors to the Pennsylvania Hospital in the proportion of one-third each; and a decree was entered December 13, 1920, signed by Gummey, J., authorizing and directing payment to Clara A. Woffington, Anna W. Worheide and the Contributors to the Pennsylvania Hospital in the proportion of one-third each, of the accumulated income in the hands of the trustee, a sum slightly in excess of $900, and also to pay said parties annually in the same proportion any future income which might subsequently accumulate in the hands of said trustee in excess of the amount necessary to pay said annuity from time to time. The petition did not ask for any distribution of excess income between the amount of $1000 and the amount required for maintenance and support, but it logically follows that such excess income is devisable in the same manner if the guardian of Rosalie Anspach is not entitled to the full sum of $1000.

Now let us revert to the language of the will itself. Testator directed that a sufficient sum be set aside "to pay the following annuities which shall be paid as follows: The sum of Five Hundred Dollars a year in equal quarterly payments, for the benefit of my niece Rosalie Anspach for . . . life." The language that immediately follows gives the trustee the option of paying the annuity in any one of three ways; and the final direction is that on the death of Rosalie Anspach the annuity of $500 "shall be distributed as is here provided for the rest of the income of my residuary estate." In the opinion of the Auditing Judge, this annuity of $500 was payable whether necessary for support or not.

The will further provides for an annuity of $1200 to Caroline Anspach, and in the event that she predeceased Rosalie Anspach, testator directed, in lieu of the annuity of $500, that "an annuity of One Thousand Dollars or so much thereof as may be necessary for her maintenance and support shall be paid for the benefit of the said Rosalie Anspach in lieu of said annuity of Five Hundred Dollars in the same way as is provided for the annuity of Five Hundred Dollars." Here it is to be noted that there is one provision similar to

that made with respect to the $500 annuity, to wit, that at the death of the annuitant, the annuity shall be distributed as provided for the rest of the income of the residuary estate. When the testator directed that the annuity should be paid in the same way as provided for, the annuity of $500, he apparently meant that payment should be made quarterly and that the trustee should have the same option as to the manner of payment. As already stated, it was obligatory on the trustee to pay $1000 or the alternative sum. Why testator gave the trustee a discretion to pay either the full sum of $1000 or a lesser sum is not clear. The fact is, however, that with the exception of the year 1920, the trustee did not exercise the discretion that he had of paying the full amount. He paid a lesser sum or nothing at all. The matter is not entirely free from doubt; and the Auditing Judge is of opinion and so rules that the administrator of the estate of Rosalie Anspach, deceased, and not the guardian of the estate, is entitled to said sum of $4458.49 hereinbefore referred to. . . .

*Matthew Randall* and *Clinton A. Sowers*, for exceptant.

*Leslie M. Swope* and *Howard H. Yocum*, contra.

HENDERSON, J., December 31, 1931.—The testator by his will gave an annuity of $1000 "or so much thereof as may be necessary for her [an invalid niece's] maintenance and support" to "be paid for the benefit of the said Rosalie Anspach. . . ."

The Auditing Judge very properly held that the trustee had a discretion either to pay $1000 a year, or "so much thereof as may be necessary for her maintenance and support." The trustee had refused to pay the full $1000, as was within his discretion; and he only paid part of the maintenance and support because, it was argued, the invalid had an estate of her own. We agree with the Auditing Judge that up to $1000 per annum, the trustee should have paid for the benefit of the invalid "so much . . . as may be necessary for her maintenance and support."

In addition to the authorities cited by the Auditing Judge, we call attention to Hoskinson's Estate, 28 Dist. R. 155, where, in a similar case, Judge Gest said:

"It is quite evident that the life-tenant had only such right or title to the income as he might derive through the exercise by the trustee of his discretionary power, except, of course, that he had a right to his comfortable support and maintenance."

Excluding the year 1920, when the trustee elected to pay the full $1000, it was agreed that the cost of support was $7208.49, and that this trustee had only paid $2750 towards the same, and hence the difference, or $4458.49, was awarded to the administrator of Rosalie.

While one of the exceptions is to the failure of the Auditing Judge to allow the $1000 per annum, as well as income and interest thereon, we treat that as an exception to the judge's failure to add interest to the amounts which he did award. The question of interest, however, was not raised before the Auditing Judge, as a reference to the record and the briefs presented, attached to the adjudication, indicates. It is a well-settled principle of our practice that no exception may be filed to a matter not raised before the Auditing Judge. However, to prevent delay and a re-reference, the Auditing Judge feels that interest would have been allowed had the parties in interest made such claim, and with his acquiescence we modify the adjudication by allowing such interest as was earned by the trustee to be added to the awards heretofore made, which awards we all approve.

The record in this estate shows that upon petition of all the parties interested in the surplus income of the trust to secure this annuity, this court made a decree on December 13, 1920, directing the trustee to pay accumulated income, and that subsequently accumulating, in excess of the annuity, to the parties to whom the income is now awarded. The trustee should have called this decree to the attention of the Auditing Judge, because this binds the surplus income.

The account shows that while the trustee has distributed income under this decree in the sum of $12,620.28, it still has undistributed cash in the sum of $10,355.79.

This petition assumed that the annuity was fixed at $1000 per annum, whereas it has now been determined to be only "so much thereof as may be necessary for her [Rosalie's] maintenance and support."

The amount now awarded to the administrator of Rosalie—$4458.59—was improperly withheld from her guardian, the income account benefiting therefrom, and as all the parties are before us, we are of opinion that the income awarded by the decree of December 13, 1920, should be marshalled to the extent of allowing thereout interest on this award to the administrator. The accountant is directed to submit to the Auditing Judge, in duplicate, a schedule of distribution, certified to be correct in accordance with this opinion, and if distribution is desired in kind, then to be approved also by the distributees.

We are of opinion that the administrator of Rosalie Anspach should enter corporate security in this court in the sum of $7500, and it is so ordered.

The exceptions are dismissed and the adjudication, as herein modified, is confirmed absolutely.